UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-3154-MWF (JCGx)           Date:  February 26, 2016
Title:    Drew Rosenhaus -v- DeSean Jackson

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge      JS-6

Deputy Clerk:                          Court Reporter:
Rita Sanchez                           Not Reported

Attorneys Present for Plaintiff:       Attorneys Present for Defendant:
None Present                           None Present

**Proceedings (In Chambers):**   ORDER RE POST-DISCOVERY BRIEFS

Petitioner Drew Rosenhaus filed a Petition to Confirm Arbitration Award (the "Petition") on April 24, 2014. (Docket No. 1). Respondent DeSean Jackson filed a Cross-Petition to Vacate Arbitration Award (the "Cross-Petition") on June 5, 2014. (Docket No. 19). The Court reviewed and considered the Petition and Cross-Petition and held a hearing on August 4, 2014. (Docket No. 29). The Court issued its Order re Petition to Confirm Arbitration Award and Cross-Petition to Vacate Arbitration Award on August 5, 2014. (Docket No. 36).

In this Order, the Court concluded that Arbitrator Roger Kaplan did not exceed his power in his interpretation of the NFLPA's anti-inducement rule and that Jackson failed to meet the high standard of vacating the award for actual bias or corruption. (*Id.* at 3–6). However, the Court determined that discovery and/or an evidentiary hearing may be necessary to address two issues: (1) whether Drew Rosenhaus' alleged selection of Arbitrator Kaplan in another arbitration needed to be disclosed; and (2) whether it was in fact disclosed. In its Order, the Court requested further briefing on these issues and whether discovery was needed to resolve them. Petitioner Rosenhaus filed his Revised Post-Hearing Brief addressing these issues on August 29, 2014. (Docket No. 33). Respondent Jackson filed his Post-Hearing Brief on September 16, 2014. (Docket No. 43). A hearing was held on October 30, 2014. (Docket No. 45).

In an Order issued December 19, 2014, the Court concluded that further discovery was needed on the nondisclosure issues presented by the parties in their post-hearing briefs.  The Court ordered limited discovery on four key issues, with instructions that the parties file post-discovery briefs once this discovery was complete.  Respondent / Cross-Petitioner DeSean Jackson lodged his Post-Discovery Brief on March 31, 2015, which the Court filed under seal on April 6, 2015.  (Docket No. 70).  Petitioner Drew Rosenhaus filed his Opposition and Supplemental Brief in Support of Petition to Confirm Arbitration Award on April 20, 2015.  (Docket No. 72).  Jackson filed his Post-Discovery Reply Brief on April 27, 2015.  (Docket No. 74).

The Court has read and considered the papers filed on this matter, and held a hearing on June 29, 2015.  For the reasons stated below, the Court concludes that Jackson is entitled to vacatur on the remaining ground of evident partiality, the Petition is **DENIED**, the Cross-Petition is **GRANTED**, and the Award is **VACATED**.

## I.    BACKGROUND

The Court repeats and expands on the background as provided in its prior Orders.  Professional football player DeSean Jackson hired sports agent Drew Rosenhaus to work as his agent in 2009, following execution of a Standard Representation Agreement ("SRA").  Drew Rosenhaus is the owner and Chairman of Rosenhaus Sports Representations, Inc. ("RSR").  After the SRA was executed, Jackson and Rosenhaus entered into a loan agreement under which RSR would advance Jackson $375,000 in a number of disbursements.  Jackson would not be required to pay interest, and would only be required to pay back $200,000, so long as Jackson did not terminate the SRA and Rosenhaus negotiated an NFL employment contract for Jackson.  (*See* Arbitration Award at 13–14, Petition Ex. B (Docket No. 1-1)).

When Jackson later terminated the employment relationship and failed to pay money that Rosenhaus claims was due, Rosenhaus filed a grievance with the National Football League Players Association ("NFLPA"), as required by NFLPA Regulations governing contracts between players and sports agents.  These Regulations provide for

an "arbitration procedure" which "shall be the exclusive method for resolving any and all disputes that may arise," in a number of specified situations, including "[a]ny dispute between an NFL player and a Contract Advisor with respect to the conduct of individual negotiations by a Contract Advisor," "[t]he meaning, interpretation or enforcement of a fee agreement," and "[a] dispute between two or more Contract Advisors" on several specific issues. (*Id.* Ex. A, at § 5(A)).

Jackson responded to the grievance, arguing that the loan agreement constituted an improper inducement under NFLPA regulations, which provide for forfeiture of contract fees in the event that an agent offers a player items of value in order to induce him to enter into an agent relationship.

Once such a grievance is filed, the Regulations state that "[t]he NFLPA shall select a skilled and experienced person to serve as the outside impartial Arbitrator for all cases arising hereunder." (*Id.* at § 5(D)). These Regulations do not elaborate on what is required in the selection of this "impartial" arbitrator or when an arbitrator is required to make disclosures.

According to Jackson's Cross-Petition, "[f]or the past twenty years, the NFLPA has appointed just one person to serve as arbitrator in virtually all of its proceedings—Roger Kaplan." (Cross-Petition at ¶ 63). Moreover, according to Jackson's reading of a House Committee report, NFLPA arbitrations are decided in favor of agents over players more than 80 percent of the time. (*Id.* ¶ 70).

Kaplan was indeed assigned by the NFLPA as the arbitrator for the dispute between Jackson and Rosenhaus. (*Id.* ¶ 130). Kaplan held a hearing on September 24, 2013, at which the parties had the opportunity to examine and cross-examine witnesses and present evidence. (*Id.* ¶ 130). After this hearing, but before Kaplan issued an award, Jackson discovered that Kaplan was simultaneously serving as the arbitrator in a dispute between Rosenhaus and Danny Martoe, a former RSR employee who claimed that RSR had failed to pay commissions owed to him. (*Id.* ¶ 164). Jackson learned that this dispute was not subject to the mandatory NFLPA arbitration process, but rather that Rosenhaus had provided for arbitration before the NFLPA in Martoe's

Employment Contract. (Decl. of William P. Quinn, Ex. E, ¶ 7.2). The NFLPA's Legal Department had granted jurisdiction over this dispute "for the purpose of advancing the clearly stated agreement of the parties" in their private employment contract, but declined to pay the arbitrator's fees and costs, as it was not an NFLPA dispute. (*Id.* Ex. G).

Jackson asked that Kaplan recuse himself from further service as arbitrator in his dispute with Rosenhaus, on the ground that Kaplan had failed to disclose his retention by Rosenhaus in the Martoe matter, creating an appearance of bias. (Cross-Petition ¶ 166). Kaplan denied the request for recusal. (Decl. of David H. Dickieson, Ex. B). In denying the request Kaplan cited to a memorandum from the NFLPA Legal Department that had been written in response to a charge of bias in a separate arbitration. (*Id.* at 4). This memorandum stated that "Kaplan routinely hears cases that involve parties who may have been a party to a previous dispute he adjudicated," and therefore "the fact that the Grievants were involved in a prior proceeding is not unusual and not a reason for recusal." (*Id.* at 4). In his denial of the request Kaplan also noted that Rosenhaus and Martoe equally split his fee. (*Id.*). Moreover, he explained that Jackson had notice of the Martoe dispute through David Cornwell, the lead attorney in the Martoe matter, who had informed Kaplan that he was also part of the legal team representing Jackson. (*Id.*). While the evidence presented indicates Cornwell did mention to Kaplan that he would be representing Jackson, and that Kaplan sent Cornwell notices of the Jackson hearing, both Jackson and Cornwell now assert that Cornwell was in fact never part of the legal team.

Kaplan issued his opinion and award (the "Arbitration Award") on April 10, 2014, determining that the means through which Rosenhaus compensated Jackson for using his services did not amount to "improper inducement" and concluding that Jackson owes Rosenhaus $516,415. (Arbitration Award at 46).

The sole remaining issue from Rosenhaus' Petition to Confirm Arbitration Award and Jackson's Cross-Petition to Vacate Arbitration Award, is whether Arbitrator Kaplan's failure to disclose the scope or nature of his prior work with Rosenhaus establishes evident partiality within the meaning of Section 10(a)(2) of the

Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(2).  To prevail on that issue Jackson must demonstrate that Kaplan failed to disclose facts that create a reasonable impression of partiality towards Rosenhaus.  Jackson has presented to the Court the evidence he collected on this issue, and the Court now examines whether it is sufficient to meet the evident partiality standard.

## II.  SUMMARY OF EVIDENCE

In its December 19 Order, the Court concluded that Jackson had presented sufficient evidence of a failure to disclose to warrant limited discovery on his claim of evident partiality.  (Docket No. 46 at 11).  This evidence includes: (1) that Arbitrator Kaplan earned $140,000 in fees by serving as the arbitrator between Rosenhaus and Martoe; (2) that this $140,000 was income over and above what Kaplan would ordinarily expect to be paid by the NFLPA to arbitrate disputes that fall within the automatic jurisdiction of the NFLPA arbitration regime; and (3) that Rosenhaus provided the opportunity for Kaplan to make this additional $140,000 by requiring his employee to resolve disputes through NFLPA arbitration, and therefore, to go before Kaplan.  (*Id.* at 9-10).

The Court then ordered further discovery on four additional factual issues that could impact its ultimate resolution of this issue: (1) whether, as Rosenhaus contends, "the use of NFLPA arbitration in employment and other disputes involving individuals in the industry is relatively routine"; (2) "whether Rosenhaus routinely provides for NFLPA arbitration in his employment contracts, or whether this practice is unusual and therefore would be unlikely to result in any significant income stream for Kaplan on an ongoing basis"; (3) "if Rosenhaus did make it a practice to require employment disputes to be resolved through NFLPA arbitration," whether Kaplan was aware of that practice, "apart from his knowledge of the Martoe arbitration itself"; and (4) whether Jackson "would not have been provided with a different arbitrator even if Kaplan had made a timely disclosure indicating bias."  (*Id.* at 11).

As to the first issue, discovery reveals that Martoe's dispute with Rosenhaus is the only non-NFLPA dispute that has ever been adjudicated in an NFLPA arbitration.

*See* Supp. Quinn Decl., Ex. B at 1 (letter from NFLPA Staff Counsel indicating that it knows of "no other cases besides *Danny Martoe v. Rosenhaus Sports Representation, Inc.*, where a dispute, not subject to the exclusive jurisdiction of the Regulations, was arbitrated pursuant to the Section 5 rules of the Regulations"). The NFLPA agreed to accept jurisdiction over that dispute solely because Rosenhaus included, on his own initiative, an NFLPA arbitration clause in Martoe's employment agreement. (*See id.* Ex. C at 1).

On the second issue, evidence reveals that RSR and Rosenhaus have included NFLPA arbitration clauses in non-NFLPA contracts nine times over a span of eight years. (*See id.* Ex. D). Moreover, Rosenhaus entered at least five contracts that explicitly require arbitration before *Kaplan*, unless he refuses to "take jurisdiction" or is unavailable: two with NFL players, two with RSR employees, and one with an independent contractor. (*See id.* Ex. D at 3-5). According to Rosenhaus, these agreements account for far less than one percent of all of Rosenhaus' contracts that contain NFLPA arbitration clauses pursuant to NFLPA section 5 procedures. (*See* Dickieson Decl. ¶¶ 10, 12). Rosenhaus explained during his deposition that these arbitration clauses are intended to protect the privacy interests of his and RSR's NFL player clients, whose confidential information was likely to be at issue in conflicts involving those recruiters. (*See* Supp. Quinn Decl., Ex. E at 14:20-15:10).

As to the third issue, the evidence shows that, at the time of the Jackson arbitration hearing, Kaplan almost certainly knew that at least three of RSR's employment agreements expressly required arbitration before the NFLPA. Kaplan saw Martoe's March 12, 2009, employment agreement, which contained an NFLPA arbitration clause. (*Id.* Ex. I at 18). The Martoe arbitration award references Martoe's original employment agreement with RSR, dated February 7, 2006, which contains a provision requiring arbitration of disputes before the NFLPA. (*Id.* at 8-11). Kaplan knew that another RSR employee, Mike Katz, signed an employment agreement identical to Martoe's March 12, 2009, employment agreement. (*Id.* Exs. J, I). Moreover, at his deposition, Rosenhaus acknowledged the possibility that, in

connection with the Martoe arbitration, Kaplan may have read all of the RSR employment agreements.  (*Id.* Ex. E. at 55-56).

On the fourth issue, discovery showed the NFLPA has received only one recusal request—from a former Rosenhaus client, Terrell Owens, asking them to recuse Kaplan because Rosenhaus was simultaneously paying half of Kaplan's fees in the Martoe arbitration—and it was rejected.  (*Id.* Ex. L).

These issues are not part of a Ninth Circuit list of elements or an approved balancing test.  The Court discusses the evidence in terms of these issues simply to give some structure to its discussion.

## III.   DISCUSSION

### A.   Evident Partiality Standard

The Court repeats its prior articulation of the relevant legal standards.  Although the FAA requires significant deference to arbitral awards, "it was [not] the purpose of Congress to authorize litigants to submit their cases and controversies [to arbitrators who] might reasonably be thought biased against one litigant and favorable to another."  *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 147 (1968) (holding, in dispute between contractor and subcontractor, that arbitrator's failure to disclose close personal and financial relationship with contractor entitled subcontractor to vacatur).  Under section 10(a)(2) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(2), a district court may vacate an arbitration award "where there is evident partiality . . . in the arbitrators."  *Woods*, 78 F.3d at 427 (citing *Schmitz v. Zilveti*, 20 F.3d 1043, 1047 (9th Cir. 1994)).  "The party challenging the arbitration decision has the burden of showing partiality."  *Id.* (citing *Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir. 1985)).

The Ninth Circuit has identified two categories of evident partiality cases: actual bias cases and nondisclosure cases.  *Id.* (citing *Schmitz*, 20 F.3d at 1045).  In actual bias cases, "[t]he appearance of impropriety, standing alone, is insufficient to establish

evident partiality . . . because a reasonable impression of partiality does not necessarily mean that the arbitration award was the product of impropriety." *Woods*, 78 F.3d at 427 (citations omitted). In other words, in actual bias cases "the integrity of the arbitrator's decision is directly at issue." *Id.*

On the other hand, in nondisclosure cases vacatur is appropriate, "where the arbitrator's failure to disclose information gives the ***impression of bias*** in favor of one party." *Woods*, 78 F.3d at 427 (citing *Commonwealth Coatings*, 393 U.S. at 149; *Schmitz*, 20 F.3d at 1047 (stating that standard for determining evident partiality in nondisclosure cases is whether there is a "[r]easonable impression of partiality")) (emphasis added). In nondisclosure cases, the integrity of the process by which arbitrators are chosen is at issue, and therefore "[a] reasonable impression of bias sufficiently establishes evident partiality." *Id.*; *see also Schmitz*, 20 F.3d at 1047 ("The parties can choose their arbitrators intelligently only when facts showing potential partiality are disclosed.").

This Court recognizes, as the Ninth Circuit did in *Woods*, that the "use of the reasonable impression of bias language from [*Commonwealth*] *Coatings* (a nondisclosure case)" in an actual bias case is "confusing." *Id.* In a lengthy discussion in *Schmitz*, the Ninth Circuit addressed the confusion and determined that because "[f]inding a 'reasonable impression' of partiality is not equivalent to, nor does it imply, a finding of actual bias," and the court must find actual bias in actual bias cases, "'reasonable impression' means something different in an actual bias case than it means in nondisclosure cases under *Commonwealth Coatings*." 20 F.3d at 1047.

The Court has already ruled that Jackson failed to demonstrate actual impartiality or bias. The remaining question is whether Jackson has alleged sufficient facts to meet the "easier" standard applied to nondisclosure cases. *Nordahl Dev. Corp., Inc. v. Salomon Smith Barney*, 309 F. Supp. 2d 1257, 1266 (D. Or. 2004) ("Non-disclosure cases are somewhat easier to prove.") (concluding that the question presented was one of actual bias and concluding that the arbitrator's failure to execute impartiality oaths did not constitute actual bias).

Courts applying the nondisclosure standard have determined an arbitration award may be vacated "when an arbitrator failed to disclose a prior relationship with a party to the arbitration or a stake in the arbitration's outcome." *Id.* In general, evident partiality has been found where "(1) an arbitrator's financial interest in the outcome of the arbitration was not disclosed to the parties, (2) a familial relationship made the arbitrator's impartiality suspect when not disclosed, and (3) an arbitrator's former employment by one of the parties was not disclosed." *Ardalan v. Macy's Inc.*, 5:09-CV-04894 JW, 2012 WL 2503972, at *3 (N.D. Cal. June 28, 2012) (an actual bias case).

In *Commonwealth Coatings Corp.*, the Supreme Court determined that the evident partiality standard was satisfied where a neutral arbitrator in a dispute between a contractor and subcontractor failed to disclose that he had previously performed consulting work worth about $12,000 for the contractor and had past dealings with the contractor over a period of four or five years. 393 U.S. at 146. In reaching this conclusion, the Court indicated that it was irrelevant that the payments received by the arbitrator had been a very small part of the arbitrator's income. *Id.*

In *Schmitz v. Zilveti*, the Ninth Circuit vacated an arbitration award for evident partiality where the arbitrator's law firm had represented the parent company of a party "in at least nineteen cases during a period of 35 years[,] the most recent representation end[ing] approximately 21 months before [the] arbitration was submitted." 20 F.3d at 1044. The *Schmitz* court determined that even where the arbitrator was unaware of his law firm's conflict, the standard for evident partiality was met because there were "facts showing a 'reasonable impression of partiality.'" *Id.* at 1048. The *Schmitz* court also indicated that the arbitrator "may have a duty to investigate independent of [his] duty to disclose." *Id.*

Rosenhaus has previously argued that *Schmitz* is of limited comparative use, as that case involved a set of specific disclosure requirements provided by the National Association of Securities Dealers and there are no such regulations governing the arbitration here. *See also New Regency Prod., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1109 (9th Cir. 2007) (recognizing a "duty to investigate" where the

arbitrator was subject to the disclosure provisions of the AFMA Rules for International Arbitration and Canon I(C) of the AAA Code of Ethics).  While Section 5(E) of the NFLPA Regulations provides that arbitration hearings "shall be conducted in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association" (the "AAA Rules"), which do provide additional requirements on disclosure, the Court agrees with the argument Rosenhaus' counsel made at the hearing that these AAA provisions apply only to the conduct of the hearing and not to the selection of the "impartial" arbitrator.  However, the Court determines that *Schmitz* is still relevant to its analysis, as Canon II of the AAA's Code of Ethics for Arbitrators in Commercial Disputes, while not binding authority, has previously been treated as persuasive authority as to general ethical guidelines.  *See Commonwealth Coatings*, 393 U.S. at 149; *New Regency Prods., Inc.*, 501 F.3d at 1110 ("Although these [arbitral rules] are not binding authority and do not have the force of law, when considered along with an attorney's traditional duty to avoid conflicts of interest, they reinforce our holding in *Schmitz* that 'a reasonable impression of partiality can form when an actual conflict of interest exists and the lawyer has constructive knowledge of it.'" (citation omitted)).

In *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 639, 646 (9th Cir. 2010), the Ninth Circuit agreed with the district court that vacatur was not warranted by the failure of two arbitrators to disclose their involvement in an ethics controversy a decade earlier.  The Ninth Circuit explained that "[u]nder the FAA, vacatur of an arbitration award is not required simply because an arbitrator failed to disclose a matter of some interest to a party.  Instead, [the arbitrator] was required to disclose only facts indicating that he might reasonably be thought biased *against one litigant and favorable to another*."  *Id.* at 646 (internal quotation omitted).  That court explained that the arbitrators had "discharged their disclosure obligations by providing information concerning their relationships with the parties, their attorneys, and those attorneys' law firms."  *Id.*

Finally, the Court notes that in some instances courts look to "[t]he policy consideration necessitating the standard in nondisclosure cases (i.e., to ensure that the

parties are able to choose the arbitrator intelligently)," in reaching a decision as to evident partiality. *Woods*, 78 F.3d at 428 (concluding that a case presented as a nondisclosure case should actually be analyzed under the actual bias standard, as there were no indications that the challenging party objected to the selection process of the arbitrator); *see also Schmitz*, 20 F.3d at 1047 ("Showing a 'reasonable impression of partiality' is sufficient in a nondisclosure case because the policy of section 10(a)(2) instructs that the parties should choose their arbitrators intelligently.").

The Court is aware that it is very difficult to prove evident bias. *See, e.g., Ruhe v. Masimo Corp.*, No. 14-55556, 2016 WL 685115, at *1 (9th Cir. Feb. 19, 2016) (overruling *Ruhe v. Masimo Corp.*, 14 F. Supp. 3d 1342 (C.D. Cal. 2014), in which the district court found evident bias based on a failure to disclose).

### B.     Sufficiency of Evidence

In order to succeed on his remaining claim of evident partiality as shown by nondisclosure, Jackson must therefore demonstrate that Kaplan failed to disclose facts that create a reasonable impression of partiality towards Rosenhaus. *Sheet Metal Workers*, 756 F.2d at 745 (burden of proof is on party defending against enforcement of arbitral award).

As the Court previously expressed in its December 19 Order, it is clear from the Ninth Circuit cases discussed above that an arbitrator's failure to disclose prior dealings with a party involved in the present arbitration that resulted in financial gain for the arbitrator can create a reasonable impression of bias. According to the evidence presented, Arbitrator Kaplan earned $140,000 in fees by serving as the arbitrator between Rosenhaus and Martoe. While Rosenhaus points out that the receipt of $140,000 in fees does not equate to additional income of $140,000, this argument is beside the point. What matters is that Kaplan was presented with a lucrative business opportunity over and above what Kaplan would ordinarily expect to be paid by the NFLPA to arbitrate disputes that fall within the automatic jurisdiction of the NFLPA arbitration regime.

The Court noted its particular concern that an arbitrator's failure to disclose a potentially lucrative source of future income from one of the parties to an arbitration can create a reasonable impression of bias.  Specifically in this case, Jackson argues that Kaplan failed to disclose Rosenhaus' alleged practice of requiring NFLPA arbitration in all of his employment contracts, creating a significant source of additional income for Kaplan.  To determine whether these allegations hold water, the Court requested the parties conduct limited discovery on four categories of evidence.

After reviewing this additional evidence, summarized above, the Court concludes that three of those categories support Jackson's argument and one of the categories is neutral.  Thus, the evidence tips the scales in favor of a finding of evident partiality.

*First*, Rosenhaus previously argued that the use of NFLPA arbitration in employment and other disputes involving individuals in the industry is relatively routine.  If true, this routine use would have undercut Jackson's argument that Kaplan would have noted the Martoe arbitration as an additional source of income.  However, the evidence failed to establish any such routine use.  The NFLPA indicated that in no other cases besides *Danny Martoe v. Rosenhaus Sports Representation, Inc.*, has a dispute that is not subject to the exclusive jurisdiction of the Regulations nevertheless been arbitrated pursuant to the Section 5 rules of the Regulations.  This evidence therefore supports Jackson's argument, because it demonstrates that Rosenhaus' practice is not standard in the industry.

*Second*, the evidence shows that Rosenhaus routinely provides for NFLPA arbitration in his employment contracts.  This evidence supports Jackson's argument that Rosenhaus' practice is a potential future source of income for Kaplan, above and beyond what he would expect to receive serving as the NFLPA arbitrator.  Rosenhaus argues that six of these employment contracts have already ended, and thus are unlikely to result in a future income stream for Kaplan, and points out that very few contracts that contain arbitration clauses ever result in arbitration.  The Court finds these arguments unpersuasive.  The relevant fact is Rosenhaus' **practice** of providing

for NFLPA arbitration in a significant number of his employment contracts.  This practice creates a source of future revenue, and thus creates an *impression* of bias.

*Third*, and most importantly, the Court has evidence that Kaplan was aware of Rosenhaus' practice through his work on the Martoe arbitration.  While the evidence on this point is necessarily weak, due to the limitations of discovery in this area, the available evidence shows that at the time of the Jackson arbitration hearing, Kaplan almost certainly knew that at least three of RSR's employment agreements expressly required arbitration before the NFLPA.  As explained above, Kaplan saw Martoe's March 12, 2009 employment agreement, which contained an NFLPA arbitration clause (*id.* Ex. I at 18), the Martoe arbitration award references Martoe's original employment agreement with RSR, dated February 7, 2006, which contains a provision requiring arbitration of disputes before the NFLPA (*id.* at 8-11), and Kaplan knew that another RSR employee, Mike Katz, signed an employment agreement identical to Martoe's March 12, 2009 employment agreement.  (*Id.* Exs. J, I).  As the Court has already determined that this practice is unusual, it strikes the Court as highly unlikely that these provisions would have escaped Kaplan's notice.  Notably, Kaplan has not submitted a declaration that attests to his state of mind at the time.  Moreover, at his deposition, Rosenhaus admitted to the possibility that, in connection with the Martoe arbitration, Kaplan may have read all of the RSR employment agreements.  (*Id.* Ex. E. at 55-56). While this Court has limited evidence on which to examine this factor, all of the evidence it does have tips in Jackson's favor.  The Court's conclusion is further reinforced by the Ninth Circuit's decision in *Schmitz*, in which the Court vacated an arbitration award on grounds of evident impartiality even if the arbitrator himself was unaware of the conflict.  20 F.3d at 1048 ("[A]n arbitrator may not know facts of which he may have been suspicious or of which he was on notice which, if true, would create a reasonable impression of partiality if not investigated and disclosed.").

While Rosenhaus argues that "[e]ven with knowledge that there was another RSR employee agreement (with Mike Katz) that contained an NFLPA arbitration clause, Arbitrator Kaplan had no reason to believe that he would be presiding over any other RSR employee disputes in the future." (Rosenhaus Post-Discovery Brief at 18).

Again, however, the Court does not find this argument particularly persuasive.  Kaplan had already presided over one such arbitration, and was aware that Rosenhaus was responsible for this business and that he had other agreements with similar provisions.  The fact that Kaplan was on notice of Rosenhaus' practice of providing for NFLPA arbitration in his employment contracts weighs in favor of finding a reasonable impression of partiality.

*Fourth*, and finally, the evidence is inconclusive as to whether the NFLPA would have provided a different arbitrator had one been requested at the time.  The evidence shows that the NFLPA has received one prior recusal request—from a former Rosenhaus client, Terrell Owens, asking it to recuse Kaplan because Rosenhaus was simultaneously paying half of Kaplan's fees in the Martoe arbitration—and it was rejected.  While it is notable that this decision was made on a request very similar to that made in the present case, ultimately the Court finds this fact unpersuasive, as it is insufficient evidence from which to draw any firm conclusions.  For example, Owens' request stated simply that another arbitrator should be assigned because Rosenhaus is paying for Kaplan's fees in the Martoe arbitration.  Notably, Owens' request did not articulate the present theory regarding Rosenhaus' general practice as an additional source of income for Kaplan.  Nor did Owens present any of the evidence before the Court.  Furthermore, as Jackson points out, "the NFLPA Regulations specifically require the NFLPA to appoint an arbitrator who is 'impartial.'"  The Court can assume that the NFLPA would in fact comply with this requirement when it truly deemed a request meritorious.

In addition, even assuming that the NFLPA would not have provided Jackson with a different arbitrator, the Court is unwilling to refuse to vacate the award on that basis alone, in the absence of Ninth Circuit authority.  There are so few constraints on an arbitrator's behavior that the district courts must enforce the ones that do exist.  It is particularly important that disclosures occur—even if recusal does not thereafter result.  *See New Regency Prods., Inc.*, 501 F.3d at 1111 ("While we are cognizant of the public interest in efficient and final arbitration, we believe that a rule encouraging

'arbitrators [to] err on the side of disclosure' is consistent with that interest." (citation omitted)).

Accordingly, considering both the law and the facts, Jackson has met his burden to show evident partiality. Kaplan received additional income from Rosenhaus in a manner that was highly unusual and Kaplan was on notice of—but failed to disclose or at least further investigate—facts reasonably giving the impression that Kaplan might be partial to Rosenhaus in the present and future arbitrations. *See In re Sussex*, 781 F.3d 1065, 1074 (9th Cir. 2015) ("[A]rbitrators must disclose facts showing they "might reasonably be thought biased against one litigant and favorable to another.") *cert. denied sub nom. Turnberry/MGM Grand Towers, LLC, v. Sussex*, 136 S. Ct. 156 (2015).

This Order is not meant as a criticism of Kaplan. The Court has previously rejected Jackson's argument that there is evidence of actual bias. Given Kaplan's unique position in professional football, it is quite unlikely that Kaplan was or would be influenced by any additional income bestowed by Rosenhaus. Rather, the Martoe arbitration and any future arbitrations probably seemed to Kaplan a favor done to the NFLPA, which had consented to assume jurisdiction for the sole purpose of advancing the clearly stated agreement of the parties. But that is not the issue. Even if Rosenhaus had given Kaplan a birthday present of a luxury car, the Court doubts Kaplan would have been influenced, but no one would argue that the car should not have to be disclosed.

## IV.    CONCLUSION

Rosenhaus' Petition to Confirm the Arbitration Award (Docket No. 1) is **DENIED**, Jackson's Cross-Petition to Vacate Arbitration Award (Docket No. 19) is **GRANTED**, and the Arbitration Award is hereby **VACATED**.

IT IS SO ORDERED.